```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
   Criminal Action No. 12-CR-00158-REB
 3
   UNITED STATES OF AMERICA,
 4
        Plaintiff,
 5
   vs.
 6
   WALDEN ALLEN SCHMIDT,
 7
        Defendant.
 8
```

_____

**REPORTER'S TRANSCRIPT**
(Sentencing)

_____

```
12         Proceedings before the HONORABLE ROBERT E. BLACKBURN,

13 Judge, United States District Court for the District of

14 Colorado, occurring at 10:06 a.m., on the 2nd day of May, 2013,

15 in Courtroom A1001, United States Courthouse, Denver, Colorado.
```

**Proceeding Recorded by Mechanical Stenography, Transcription**
Produced via Computer by Tracy Weir, 901 19th Street,
Room A258, Denver, Colorado, 80294, (303) 298-1207

2

1       APPEARANCES

2           RYAN BERGSIEKER, Assistant U.S. Attorney, 1225 17th

3    Street, Suite 700, Denver, Colorado, 80202, appearing for the

4    plaintiff.

5           HARVEY STEINBERG, Attorney at Law, 1600 Broadway,

6    Suite 1200, Denver, Colorado, 80202, appearing for the

7    defendant.

8                     *   *   *   *   *

9                     **PROCEEDINGS**

10          (In open court at 10:06.)

11          *THE COURT:*  Good morning, and thank you.  Please be

12   seated.

13          This is case 12-cr-00158, identified as United States

14   of America versus Walden Allen Schmidt, defendant.  The matter

15   is before this Court for sentencing hearing.

16          The Government appears by assistant United States

17   attorney, Ryan Bergsieker.  Good morning.

18          *MR. BERGSIEKER:*  Good morning, Your Honor.

19          *THE COURT:*  The defendant, Walden Allen Schmidt, is

20   present in person together with his attorney, Harvey Steinberg.

21   Good morning.

22          *MR. STEINBERG:*  Good morning.

23          *THE COURT:*  Probation officer, Gary Kruck, is also

24   present.  Good morning.

25          *MR. KRUCK:*  Good morning, Your Honor.

1        *THE COURT:*  Assuming we are prepared to proceed to

2   sentencing as stated and understood by the Court, I first find

3   and conclude relevantly that as required by 18 U.S.C. Section

4   3552 and Federal Rules of Criminal Procedure 32, the probation

5   department has conducted a presentence investigation and has

6   filed a presentence report replete with an addendum.

7        The record should show that I have received, read, and

8   reviewed carefully both the presentence report and its

9   addendum.  Has the Government, Mr. Bergsieker?

10       *MR. BERGSIEKER:*  Yes, Your Honor.

11       *THE COURT:*  Are there any additions or corrections of

12   a material or substantive nature not now of record?

13       *MR. BERGSIEKER:*  No, Your Honor.

14       *THE COURT:*  Thank you.

15       Mr. Steinberg, a series of related questions.  First,

16   have you read the presentence report and its addendum; second,

17   to your knowledge, has Mr. Schmidt done likewise; and, third,

18   and perhaps most importantly, have you reviewed and discussed

19   the presentence report and its addendum carefully and

20   thoroughly with Mr. Schmidt?

21       *MR. STEINBERG:*  Yes to all three queries.

22       *THE COURT:*  From the perspective of the defense, are

23   there additions or corrections of a material or substantive

24   nature not now of record?

25       *MR. STEINBERG:*  No, sir.

1        *THE COURT:*  Also pending before the Court relevant to

2    sentencing are the following papers:

3        The United States' motion to dismiss Counts 1, 3, and

4    4 of the indictment at time of sentencing, document 42, filed

5    on December 26, 2012.

6        The United States' motion under U.S.S.G. 3E1.1(b) for

7    one level reduction in defendant's offense level for acceptance

8    of responsibility, document 43, also filed on December 26,

9    2012.

10        The Government's notice to Court regarding

11    administrative forfeiture, document 44, filed on December 27,

12    2012.

13        The United States' response to presentence

14    investigation report, document 46, filed on February 27, 2013.

15        And, lastly, the defendant's motion for a variance,

16    document 47, filed on March 11, 2013.

17        Very well.  Mr. Steinberg, I return to you to inquire,

18    as I must.  Do you wish to make a statement or presentation on

19    behalf of Mr. Schmidt, offer additional information in

20    mitigation of sentencing, comment further on the various

21    determinations of the probation department, and be heard on

22    matters relating to the appropriate sentence?

23        *MR. STEINBERG:*  I do, sir.

24        *THE COURT:*  And, of course, you may.

25        *MR. STEINBERG:*  Thank you, sir.

1        *THE COURT:*  You're welcome.

2           *MR. STEINBERG:*  I'm going to suggest to you that these

3    cases may be the most difficult cases that both counsel and the

4    Court deal with, and I say that because I'm going to suggest,

5    with all due respect, that sentencing is always a balancing

6    act, and oftentimes people themselves have sentenced themselves

7    before the Court even comes into a court.

8           In this particular case, the balance is exceedingly

9    difficult.  Mr. Schmidt presents as an individual who's had no

10   prior criminal conduct.  I believe he's 46 years old.  He's the

11   father of children.  He was gainfully employed through most of

12   his life and an otherwise good citizen.

13          On the other side of the balance, you probably have

14   what most people would indicate is one of the more horrific

15   crimes that can be committed, and that in and of itself makes

16   it a difficult balancing act.

17          But I'm going to suggest to you that the approach that

18   perhaps the federal government has taken is not quite as

19   enlightened as the state government, and the reason I say that

20   is because the state government in Colorado in particular

21   prosecutes cases of a similar ilk with great regularity,

22   unfortunately.

23          When this situation occurred and Mr. Schmidt hired me,

24   he came to me and said, I need help.  I said, Well, certainly,

25   I'm not in the position to give you the kind of help you need,

1    but because of my activities, if you will, in state

2    prosecutions, I sent him to Dr. May's group which is known as

3    treatment and evaluation services that works under the Colorado

4    statutory guise for treatment of sex offenders, and they have

5    an offense specific treatment statute that governs their

6    conduct and they report regularly to courts such as yourself

7    but at the state level, obviously, not Article III judges.

8         They have been involved in the treatment and

9    evaluation of similarly situated individuals as my client in

10   thousands of cases and appear in courts hundreds of times.

11        Dr. May felt that he needed to have Mr. Schmidt in

12   treatment right away, and I'm here to tell you that his

13   personal counselor is available to the Court for questions.

14   Her name is Ms. McMann.  She would tell you that he has

15   attended 26 different treatment sessions and that's in group,

16   which is the modus operandi that is used.  It is the treatment

17   modality found to be most successful.

18        In addition to that, he has attended several

19   individual sessions.

20        She would tell you if this were a state kind of

21   prosecution, that their recommendation to the judge would be

22   that he be allowed to remain in the community and continue in

23   his treatment because based on their evaluation services they

24   feel that that would be the best place.

25        Having said that, Mr. Schmidt and I understand that

1    this Court is not in a position to even consider that.  The

2    question before the Court is, what's an appropriate sentence.

3    On the one hand, I understand the balance is weighed heavily

4    because of the nature and circumstances of the conduct, and I

5    don't dispute that, but I do believe that this Court, in

6    particular, has always individualized sentences and has always

7    felt that a sentence has to be crafted to the individual

8    conduct but also the individual needs of a defendant.

9            In this particular case, I'm going to suggest that a

10   60-month sentence serves all the needs of the defendant but

11   also the other needs that the Court must consider, and that is

12   deterrent to others as well as punishment for the activities.

13           60 months, obviously, for this defendant is a long

14   time given his age.  I think it deters others who would

15   consider involving themself in this kind of conduct.  It may

16   be, if you will, the appropriate sentence in terms of his

17   treatment needs, but I think sometimes his treatment needs have

18   to take a secondary step to what the Court's ultimate goals

19   are, and that is punishment as well as deterrence and also

20   factoring individualized needs.

21           When you have an individual such as Mr. Schmidt who

22   has accepted responsibility, understands the issues, has tried

23   to deal with them and been -- as you know, he's been compliant

24   while on pretrial services release.  He's done everything he

25   was asked to do.  He, as I said, has involved himself in the

1    appropriate therapy.

2           We always search for a reason.  We always search for

3    why someone got into this.  Everyone has their own personal

4    demons and we deal with them in our own personalized fashion.

5           In my discussions with Mr. Schmidt, as well as I think

6    what therapy has revealed, he never quite resolved the death of

7    his child due to SIDS, and, for some reason that we can't

8    understand, perhaps that drove him over the edge.  That's not

9    meant as an excuse but, rather, an explanation.  So he dealt

10   with it in a difficult and rather reprehensible sort of way.

11          But having said that, if the Court accepts the fact

12   that he's on the road to recovery, that he's done everything he

13   can possibly do to try to better himself and make sure this

14   never occurs, and the fact that the professionals are in

15   concurrence with the path that he's taken, my respectful

16   suggestion you to, sir, is that a 60-month sentence addresses

17   the other issues the Court has, especially in light of the

18   fact, if I recall correctly, the maximum sentence the Court

19   could impose in a situation like that pursuant to statute would

20   be 120 months.  A sentence of 60 months for a first-time

21   offender given what efforts he's made to rehabilitate would be

22   an appropriate sentence.

23          I should tell you Ms. McMann is here should you have

24   any questions of her.  I confirmed with her the statements I

25   was going to make to the Court would be the statements that she

1   would make, but if the Court has any issues, has any questions

2   of her, she's prepared to answer those, and I leave that to

3   your discretion.

4           *THE COURT:*  Thank you.  For now, I have none, Counsel.

5   Thank you.

6           *MR. STEINBERG:*  Thank you, sir.

7           *THE COURT:*  Mr. Schmidt, before I impose sentence on

8   you this morning, you first have the legal right and

9   opportunity now, if you choose, to make your own statement to

10  this Court and/or to offer additional information in

11  mitigation, lessening of that sentence.  Do you understand that

12  you now have this important right and opportunity?

13          *THE DEFENDANT:*  Yes, Your Honor.

14          *THE COURT:*  Having that important right and

15  opportunity in mind, do you wish to make any such statement or

16  offer any information in mitigation?

17          *THE DEFENDANT:*  Yes, Your Honor.

18          *THE COURT:*  And you may.  Would you and your attorney

19  please report to the podium.  And I thank you both.

20          Mr. Schmidt, before I receive your anticipated

21  sentencing statement, please first raise your right hand to be

22  sworn by this Court.  Thank you.

23          (At this time the defendant was sworn.)

24          *THE DEFENDANT:*  Yes, Your Honor.

25          *THE COURT:*  Mr. Schmidt, now under oath, what is it

1  you would tell the Court?

2       *THE DEFENDANT:*  Your Honor, I would, first of all,

3  like to say I offer no excuses for my actions.  My actions were

4  wrong.  If I could take them back, I would take them back in an

5  instant.

6       I realize now that at the time I hadn't dealt with the

7  grief of my child, the loss of my child.  I thought I had, and

8  I thought I was on top of it, and I wasn't, and I've since

9  vowed to turn my life around.  Actually, I began the process

10  long before I was indicted.  I had already been making efforts

11  to live a better life, a healthier life.

12       Since the indictment, I have not only gone to sex

13  offender treatment, I've been in drug treatment as well as

14  grief counseling all on my own decision.  I have had the

15  wonderful support of my family who has stood by me through

16  this.  I just want the Court to know that I am committed,

17  regardless of what the sentence is, to completing all these

18  processes and living a healthy, positive life.

19       I just want to let you know I have never been or will

20  never harm anyone in the community.  I'm committed to that.

21  That is the last thing I've ever wanted was to hurt anybody,

22  and I will honor that commitment going forward.

23       *THE COURT:*  Very well.  Thank you.  Gentlemen, again,

24  you may be seated.

25       Mr. Bergsieker, does the Government wish to be heard

 1   on matters material to the imposition of this sentence?

 2           *MR. BERGSIEKER:*  Yes, Your Honor.

 3           *THE COURT:*  And you may.

 4           *MR. BERGSIEKER:*  Thank you, Your Honor.

 5           *THE COURT:*  You're welcome.

 6           *MR. BERGSIEKER:*  Your Honor, in this case, the

 7   Government agrees with the probation sentence that a sentence

 8   of 108 months imprisonment, in the middle of this defendant's

 9   sentencing guideline ranges, is the appropriate disposition in

10   this case.

11           The Government makes that recommendation for a number

12   of different reasons.  The first pertain to the nature and

13   circumstances of the offense.  All of the reasons, of course,

14   are tied to 18 U.S.C. Section 3553(a) that the Court must

15   consider.

16           As the Court is well aware in its experience from

17   dealing with these cases, any offense involving child

18   pornography is a significant offense.  I think Mr. Steinberg

19   conceded as much this morning.  There are real victims who

20   suffer as a result of the desire of folks like Mr. Steinberg --

21   not Mr. Steinberg -- the defendant in this case -- excuse me --

22   to feed the market for these images.

23           The victim impact statements that are attached to the

24   presentence report in this case make clear there's

25   victimization that occurs not just from the original abuse that

1   may be photographed but from the ongoing distribution of those

2   images and the knowledge by those victims that their images are

3   possessed by individuals like the defendant.

4          This is a case where there were not just a few images

5   that the defendant possessed.  This wasn't just a one-time

6   slip-up.  The defendant had in excess of 13,000 images of child

7   pornography.  In fact, he stipulated in the plea agreement that

8   there were more than 13,153 images that he possessed.

9          These images were so important to the defendant that

10  he had saved them not just on his computer but also on two

11  separate thumb drives he had at his residence.

12         As the Court is aware, possessing 600 images would be

13  enough to put this defendant into the advisory guidelines range

14  that he falls in so there's an additional 12,500 images

15  speaking to the depth of this defendant's addiction to these

16  types of images that support a sentence in the middle of the

17  range and, certainly, support a sentence within the range and

18  no variance to a sentence of 60 months imprisonment.

19         I think what's also important about this defendant's

20  collection of child pornography is that, by his own admission,

21  he had been collecting child pornography for a period of years,

22  at least two years, prior to the execution of the search

23  warrant.

24         When we look to the history and characteristics of the

25  defendant, I think there's really no reason to vary from the

1    advisory guidelines range here, and I think that one of the

2    things that speaks most clearly to the history and

3    characteristics of the defendant is the letter that came to the

4    Court from the defendant's own daughter.  That's document 60-1.

5    I know the Court has reviewed the letter in its entirety, but I

6    want to highlight a couple of aspects of the letter.

7        The defendant's daughter has said, "I know my dad's in

8    trouble and, quite honestly, it doesn't surprise me."  Skipping

9    forward a bit, "He's always thought his way was the best way

10   and that some rules just don't apply to everyone.  He thinks he

11   knows more than he really does.  To be 27 and know that I'm

12   more mature than my father is quite sad."

13       She goes on to speak of the way that, in her view, her

14   father has made the dumbest choices, no joke.  The dumbest

15   choices.  According to his daughter, the defendant is still

16   very much a child.  She talks again about the importance of

17   being a responsible adult, which is hit or miss for her father.

18       She speaks later of his empty promises and excuses.

19   She speaks of the way she wishes he'd think about the

20   consequences that flow from the choices he makes and how they

21   affect others.

22       Your Honor, when I look at these statements from the

23   defendant's own daughter, these are not statements about

24   someone whose history and characteristics would support a

25   variance from the advisory guidelines range.  I think that they

1  speak of someone who really is a risk to recidivate in the

2  future because of the poor choices he has made in the past and

3  the risk that he poses to others in the future, that he will

4  make poor choices again.

5      There are several reasons that the Government would

6  submit that the request for the variance is unwarranted in this

7  case.  The first is that one of the important goals of 18

8  U.S.C. Section 3553(a) is to avoid unwarranted sentencing

9  disparities, and to grant a variance in this case on the record

10 in this case would create just such an unwarranted disparity.

11     When we look at the presentence report and its

12 description of the defendant, there's no history of service to

13 country or community.  There's no history of great service to

14 his family either.  There's no exceptionally disadvantaged

15 childhood.  There's no lack of community support.  In fact, the

16 courtroom is filled with individuals this morning, and there's

17 no showing that these individuals were not in the defendant's

18 life at the time that he was committing these offenses.  He had

19 community support to fall back on, yet he still committed these

20 offenses.

21     I would respectfully disagree with Mr. Steinberg about

22 the defendant's record of post-offense rehabilitation.  I note

23 that the defendant didn't start doing any of this

24 rehabilitation until after indictment.  That's even true of the

25 drug counseling and grief counseling that could have been begun

1    earlier.  I know some defendants would say, well, I can't go to

2    sex offender treatment prior to indictment, but at least this

3    other type of treatment was available to the defendant.  He

4    chose to go there only after indictment.

5         I would submit that the defendant's overall compliance

6    with the terms of his bond have been reasonable as put forth by

7    the probation department, but Mr. Kruck is present here today

8    and is prepared to advise the Court that even when the

9    defendant was granted the extraordinary opportunity of

10   remaining on bond while his daughter was born, the defendant

11   did not fully comply with the terms of his bond.  He went to

12   places that he should not go without informing his probation

13   officer, his supervising officer.  So these are things where

14   the defendant has not had such an exceptional change of

15   circumstances while he's been on bond that it supports a

16   departure from 108 months, the center of the guidelines, to 60

17   months of imprisonment.

18        The defendant has gone through some treatment, but

19   that treatment, of course, is not a full range of treatment

20   that he will receive after his term of incarceration in this

21   case.  There's no showing that he's gone through polygraph

22   testing regarding the extent of his activities.  No showing of

23   plethysmograph or Abel testing or anything along those lines.

24   This is not a case where we can stand before the Court and say

25   this defendant is cured and there's nothing more to be done.

1        Rather, this is a circumstance where there is a need

2    for punishment, a need to protect the community from further

3    crimes of this defendant, and there is a need to ensure this

4    defendant is treated similarly to other defendants within the

5    federal system who have been convicted of similar offenses.

6        For those reasons and all the other factors in 18

7    U.S.C. Section 3553(a), the Government submits a sentence at

8    the middle of the guidelines is warranted.  Thank you.

9        *THE COURT:*  Counsel, while at the podium, let me

10   inquire.  Have the victims of this crime been afforded their

11   rights under federal law?  I have in mind 18 U.S.C. Section

12   3771 and Federal Rules of Criminal Procedure 60.

13       *MR. BERGSIEKER:*  They have.

14       *THE COURT:*  To your knowledge, are there any victims

15   or victim advocates in open court who wish or intend or desire

16   to address the Court?

17       *MR. BERGSIEKER:*  I looked this morning.  We were not

18   anticipating any today.  I have looked again and I do not see

19   any who wish to make a statement.  As the Court is aware, some

20   of the victims have submitted written statements for the

21   Court's consideration.

22       *THE COURT:*  Thank you, Counsel.

23       *MR. BERGSIEKER:*  Thank you, Your Honor.

24       *THE COURT:*  Having considered all relevant matters of

25   fact and law, I now enter the following sentencing statement,

1    as I must, under 18 U.S.C. Section 3553(c).  Thus, based on

2    this record considered as a whole, I enter the following

3    findings of fact, conclusions of law, judgment of conviction,

4    sentence, and orders, commencing with my findings and

5    conclusions.

6         For the record, I have considered carefully the

7    following factors and circumstances:

8         The plea agreement of the parties themselves,

9    including their written stipulation of facts, the nature and

10   circumstances of the offense of conviction focusing, as I must,

11   on its real conduct.

12        The history and characteristics of Mr. Schmidt as the

13   offender.

14        The sentences permitted by law essentially cataloged

15   at 18 U.S.C. Section 3551.

16        The presentence report and its addendum.  All are

17   thoughtful, thorough, helpful, and relevant.

18        Mr. Kruck, my thanks to you on the record.

19        The basic purposes of criminal punishment as declared

20   by our Congress in this overarching superintending Sentencing

21   Reform Act of 1984 focusing on deterrence, incapacitation, just

22   punishment, and rehabilitation, noting that as a matter of law

23   imprisonment is not an appropriate means of promoting

24   correction and rehabilitation.

25        The purposes and goals of sentencing as prescribed by

1    Congress in the familiar 18 U.S.C. Section 3553(a)(2).

2         All factors that I must consider in my sentencing

3    calculus codified essentially at 18 U.S.C. Sections 3582(a)

4    and, of course, the familiar 3553(a)(1) through (7).

5         The constitutional and relevant provisions of the now

6    advisory United States Sentencing Guidelines as they apply to

7    this offense, this offender, and all relevant conduct.

8         The kinds of sentence and sentencing range established

9    under those advisory sentencing guidelines for this applicable

10   category of offense committed by this applicable category of

11   defendant, a clear reference to Section 3553(a)(4).

12        However, I note quickly and importantly I have not

13   presumed that the advisory sentencing guideline range is

14   reasonable.

15        The important and continuing need always to avoid

16   unwarranted sentencing disparities by, in the words of the

17   *Booker* court, ensuring similar sentences for those who have

18   committed similar crimes in similar ways.

19        The important need to restitute victims.

20        All pertinent policy statements of the United States

21   Sentencing Commission.

22        The need to impose a sentence that satisfies the

23   requirements and needs of Section 3553(a)(2).

24        The advancement of the seminal congressional goals of

25   honesty, uniformity, and proportionality in sentencing.

1          The principle and requirement codified now at Section

2     3553(a) to impose a sentence that is sufficient but not greater

3     than necessary to achieve the goals and purposes of the

4     sentencing statute itself.

5          The position of the real parties in interest, the

6     Government, the defense, the probation department, and the

7     victims of this crime.

8          The various papers that I identified at the outset of

9     this sentencing hearing.

10          All relevant information concerning the background,

11     character, and conduct of Mr. Schmidt in the exercise of my

12     discretion under 18 U.S.C. Section 3661.

13          And, finally, but certainly importantly, all facts

14     presented, reasons stated, arguments advanced, and authorities

15     cited by all parties in interest in their sentencing papers or

16     during their sentencing hearing.

17          The Government filed objections to the presentence

18     report.  Its objections were presented, stated, and argued in

19     United States' response to the presentence investigation

20     report, document 46.

21          The Government's objections were duly noted by the

22     probation officer who included the information proposed by the

23     Government in the presentence report.  Thus, no formal ruling

24     otherwise is required.

25          That otherwise I accept the presentence report as an

1    integral part of my findings of fact.

2          That on December 20, 2012, I conducted a change of

3    plea hearing during which Mr. Schmidt, pursuant to his plea

4    agreement, voluntarily, knowingly, intelligently, and

5    intentionally entered an unconditional plea of guilty to the

6    crime charged in Count 2 of the indictment and was found guilty

7    of that crime, possession of child pornography, violative of

8    federal law at 18 U.S.C. Section 2252A(a)(5)(B) and (b)(2), a

9    Class C felony, committed on or about November 17, 2009.

10          During that same change of plea hearing, Mr. Schmidt

11    entered his voluntary and knowing admission to the forfeiture

12    allegation of the indictment.

13          That the November 2012 edition of the United States

14    Sentencing Commission Guidelines Manual applies.  Thus, I have

15    used that edition of advisory sentencing guidelines as the

16    starting point and the initial benchmark for my own sentencing

17    analysis.

18          Identification, consideration, and application of all

19    relevant advisory sentencing guidelines to this offense, this

20    offender, and all relevant conduct produces a total adjusted

21    advisory offense level of 30 and an advisory criminal history

22    category of I.

23          That, in turn, the advisory sentencing guideline

24    ranges are as follows:

25          Imprisonment, 97 to 120 months.  120 months

1    representing the statutory maximum for the crime of conviction.

2            Supervised release, not less than five years, to life.

3            And fines ranging from $15,000 to $150,000.

4            Distinguishing between a departure and a variance,

5    there is no request or reason to depart from the advisory

6    sentencing guideline range.

7            Next, I consider the individual and discrete

8    sentencing factors and needs at 18 U.S.C. Section 3553(a)(1)

9    through (7) and the defendant's motion for a downward sentence

10   variance and make an individualized assessment based on the

11   facts presented.

12           I begin with an analysis and consideration and the

13   nature and circumstances of the crime of conviction.  The crime

14   is among the most reprehensible chargeable under the United

15   States code.  It is as ruinous as it is reprehensible.  In many

16   respects, its heinousness borders on the inevitable and,

17   frankly, this perversion has no place in a civilized society.

18   It harms.  It scars.  It victimizes.  It ruins the most

19   vulnerable members of our community, our children, for whom the

20   law provides special protection and deservedly so.

21           I hold in my hand, of course, information I received

22   in connection with this case, largely from the victims and

23   their counsel.  The manner in which this crime was committed is

24   especially severe.  I know that technically this is the first

25   offense for Mr. Schmidt, but this collection, this careful

1   preservation, this viewing of this filth lasted for over more

2   than two years.

3        It involved more than 13,000 images of child

4   pornography.  Many of the images the children were under the

5   age of 12.  Some 10 and younger.  Males and females.

6   Masochism, sadism, bondage, torture, sodomy.  Every manner of

7   incomprehensible abuse of a child.  What's the harm in one man

8   maintaining and simply viewing this child pornography as a

9   voyeur only, never intending, never going to hands on

10  physically assaulting a child?  I'll tell you what's wrong with

11  it.  Because it's the possession of the perverse filth that

12  fuels the creation of more and more child pornography.  It is

13  irrefutable that without voyeurs like Mr. Schmidt, there would

14  be no demand, no market, no need for such perversion whose

15  extinction should be its only fate.

16       And child pornography is different than, let's say,

17  the drug trade.  You want drugs, you pay a drug dealer money

18  and you get drugs, typically.  The way child pornography works,

19  the way it's evolving, is there is an ongoing demand for more

20  sadistic, masochistic and brutal mistreatment and abuse of

21  these children.  It's almost insatiable and that's why the

22  punishment for even the possession of child pornography is so

23  important to our community, especially to its children who are

24  incapable of preserving and protecting themselves.

25       And here's how this filth works.  These victim impact

1    statements are filled with blogs where people are discussing

2    one 10-year-old girl who has performed fellatio on her father

3    and simply saying, there's no crime there.  It looks like she

4    enjoyed it.  Well, that's the problem with this child

5    pornography.  That's the problem with one man possessing it and

6    using it because it contributes to an industry that has no

7    business in this country.

8              It contributes to bloggers who, frankly, have the

9    right under the First Amendment to engage in such a colloquy,

10   but, my goodness, if they had one ounce of moral sense, would

11   never go there other than to condemn unconditionally,

12   unconditionally this form of horrible child abuse.

13             So the time over which the crime was committed, the

14   manner in which it was committed, the number of images, the age

15   of the children, the type of conduct that is displayed in this

16   pornography all make this an especially serious offense.

17             I transition quickly to the history and

18   characteristics of Mr. Schmidt as the offender, and, as I

19   always do, I treat him as the unique being that he is, and, to

20   rehearse, he's 46 years of age.  He has a college education.

21   So he's certainly old enough and smart enough and educated

22   enough to know better.  He has children of his own.  It is true

23   that he has suffered that which is incomprehensible and which

24   no parent should suffer, and that is the death of a child

25   preceding their own, but there's no causal connection between

1    the unresolved grief in the death of that child and this

2    selfish lust for the sexual perversion and misuse of children.

3    If there is a connection, it is not one that would explain or

4    excuse it or insulate or isolate Mr. Schmidt who, like the rest

5    of us, is personally responsible and accountable for his

6    criminal conduct and its consequences to him, his victims, his

7    family, the community, and others.

8         In considering the motion for sentence variance, I'm

9    looking for things that set Mr. Schmidt apart from those who

10   are similarly situated.  I'm looking for outstanding service to

11   country or community.  Here, there is none.  I'm looking for an

12   especially difficult or disfunctional childhood with which

13   there is a causal link to the criminal conduct.  That does not

14   exist here.

15        I'm looking for significant post-offense

16   rehabilitation.  I find significant post-offense

17   rehabilitation, but it appears to have been motivated largely

18   as a result of being caught because although this is a crime

19   and is considered only one crime, not a continuation of myriad

20   crimes, this is not a situation where Mr. Schmidt woke up one

21   day in a fit of conscience and said, This is wrong.  This is

22   immoral.  This is illegal.

23        Like most people that appear before this Court, he

24   quit because he got caught, and then, of course, most of which

25   comes afterward is specifically intended and designed, frankly,

1    to influence the Court at just such a sentencing hearing.

2           To the extent that it has benefited Mr. Schmidt, then

3    kudos to him.  It provides an additional modicum of protection

4    for our community, especially its vulnerable children.

5           Here, deterrence is so important.  Deterrence of

6    Mr. Schmidt and deterrence of those who are similarly situated

7    and inclined.  Only a lengthy sentence to prison will cause

8    anyone to stop and say, Is this worth this?  Is the risk of

9    years in prison worth the satiation of this perverse lust

10   involving children?

11          Protection of the public is equally paramount.  Our

12   children deserve our protection.  They cannot protect

13   themselves.  The problem with child pornography, it doesn't end

14   with the filming or the videoing of the egregious acts

15   themselves.  In the days of cyberspace, these children are

16   victimized over and over and over again.  Many of the victims

17   of the child pornography in the possession and used by

18   Mr. Schmidt write poignantly about their contact later in life,

19   as teenagers, and as adults by men who are interested in them

20   for sexual purposes.  They did it as a child.  Wonder if they'd

21   be willing to engage this as an adult.  That is an example of

22   the heinousness of the crime itself and the absolute need for

23   the protection of our public.

24          Respect for the law also plays a part.  The sentence

25   must be sufficiently lengthy; that we actually promote, not

1    undermine, protection of the law.

2          Sentencing parity is something the Court must

3    consider.  Mr. Schmidt must be sentenced to eschew unwarranted

4    sentencing disparities.

5          Thus, having considered all matters in mitigation and

6    aggravation through the unique lens and prism of Section

7    3553(a)(1) through (7), I conclude ultimately as follows:

8          That no sentence variance should be granted.

9          That, instead, Mr. Schmidt should be sentenced within

10   the advisory guideline range of 97 to 120 months in the Bureau

11   of Prisons.  However, all matters in mitigation convince me he

12   should be sentenced at the low end of that sentencing guideline

13   range to a sentence of 97 months.  Such a sentence is

14   sufficient, but not greater than necessary, to achieve the

15   important goals and purposes of our sentencing statute, Section

16   3553(a).

17         Here, Mr. Schmidt is financially unable to pay a fine.

18   Therefore, no fine should be imposed.  There is restitution

19   here.  The mandatory victim restitution act of 1996 applies,

20   given the agreement of the parties in this plea agreement, to

21   which no direct or express objection has been made by any

22   victim or victims' representative.  I find that restitution

23   totals $5,000.  That's $2,500 to each of two identifiable

24   victims among the child pornography possessed by Mr. Schmidt.

25   That is $2,500 payable to Carol Hepburn of Seattle, Washington,

1    and $2,500 payable to John Ratcliff of Dallas, Texas.

2         That restitution is initially payable in full and, if

3    not, in monthly installments during the course of the

4    defendant's supervised release of not less than 10% of his

5    monthly gross income as determined periodically by his

6    probation officer.  This alternative payment schedule comes as

7    a result of my consideration and application of the factors at

8    18 U.S.C. Section 3664(f)(2)(A) through (C).

9         That pursuant to the plea agreement of the parties,

10   that based on the admission of Mr. Schmidt to the forfeiture

11   allegation in the indictment, an order and judgment of

12   forfeiture should be entered under 18 U.S.C. Section 2253(b)

13   and 21 U.S.C. Section 853(p).

14        Therefore, it is ordered as follows:

15        That the plea agreement of these parties as

16   memorialized and preserved in the originals of Court's Exhibits

17   1 and 2 is formally approved.

18        That the United States' motion to dismiss Counts 1, 3,

19   and 4 of the indictment at time of sentencing, document 42, is

20   granted.

21        That, accordingly, Counts 1, 3, and 4 of the

22   indictment are dismissed with prejudice.

23        The United States' motion under Guideline Section

24   3E1.1(b), document 43, is granted.

25        The defendant's motion for variance, document 47, is

1    respectfully denied.

2           That pursuant to the Sentencing Reform Act of 1984, it

3    is the judgment and sentence of this Court that the defendant,

4    Walden Allen Schmidt, be committed to the Bureau of Prisons to

5    be imprisoned for a term of 97 months.

6           That on release from imprisonment, Mr. Schmidt shall

7    be placed on supervised release for a term of ten years, not

8    the 20 years as requested by the probation department.

9           That within 72 hours of his release from imprisonment,

10   Mr. Schmidt shall report in person to the United States

11   probation department within the federal district to which he is

12   released.

13          That while on probation -- strike that -- while on

14   supervised release, Mr. Schmidt shall comply with the following

15   conditions of supervised release.

16          First, he shall comply with all mandatory conditions

17   required by law at 18 U.S.C. Section 3583(d) and Guideline

18   Section 5D1.3(a).

19          Second, he shall comply with all standard conditions

20   that are imposed by this Court in virtually all such cases and

21   now including this one.

22          And, third, he shall comply with the following

23   explicit, or special, conditions.  Mr. Schmidt shall not

24   violate any federal, state, or local law.  He shall not possess

25   or use illegally any controlled substance.  He shall not

1    possess or use any firearm, destructive device, or dangerous

2    weapon as those terms are defined in our federal law.  He shall

3    cooperate fully in the collection of a sample of his DNA.

4           That within 15 days of his release from imprisonment

5    and as directed by his probation officer, he shall submit to

6    one drug test and, thereafter, to at least two additional

7    periodic tests for the use of controlled substances as directed

8    by the Court.

9           That as directed by the probation officer and at his

10   expense, Mr. Schmidt shall undergo an alcohol substance abuse

11   evaluation, a mental health evaluation, and a sex offender

12   evaluation, and, thereafter, at his own expense, unless then

13   indigent, shall receive any treatment, therapy, counseling,

14   testing, or education prescribed by such evaluation or as

15   required reasonably by his probation officer or as ordered by

16   the Court.

17          Concerning the results of any sex offender evaluation,

18   his treatment and therapy may consist of polygraph examination,

19   plethysmograph examination and Abel examinations.

20          Provided furthermore that Mr. Schmidt shall abstain

21   from the use of alcohol and all other intoxicants during the

22   course of any such treatment or therapy, and that to ensure

23   continuity of treatment, the probation department is authorized

24   to release all records of Mr. Schmidt, including the

25   presentence report, to any person or entity involved in or

1   responsible for his treatment, therapy, counseling, testing, or
2   education.
3           The use and access of Mr. Schmidt of and to computers
4   and the internet shall be limited to those requested by the
5   defendant and authorized by his probation officer.
6           Mr. Schmidt shall submit his person and any property,
7   house, apartment, residence, vehicle, papers, computer, or
8   other electronic communications or data, storage, devices, or
9   media and effects to search at anytime with or without warrant
10  by any law enforcement officer or probation officer having
11  reasonable suspicion concerning a violation of a condition of
12  supervised release or otherwise criminal conduct.
13          Mr. Schmidt shall allow his probation officer to
14  install software and hardware designed to monitor computer
15  activities on any computer the defendant is authorized by his
16  probation officer to access or use.  Such software may record
17  any and all activity on the computer, including the capture of
18  key strokes, application information, internet use history,
19  e-mail correspondence, and chat conversations.
20          A notice shall be placed on the computer at the time
21  of installation to warn others of the existence of this
22  monitoring software, and Mr. Schmidt shall not attempt to
23  remove, tamper with, reverse, engineer, or anyway circumvent
24  any such software or hardware which is installed.
25          The defendant shall have no unsupervised contact with

1    any minor.  He shall not incur new credit charges or open

2    additional lines of credit without the approval of his

3    probation officer.

4         As directed by his probation officer, Mr. Schmidt

5    shall apply any monies received from income tax refunds,

6    lottery winnings, inheritances, devises, judgments, and any

7    anticipated or unexpected financial gains to the outstanding

8    court ordered financial obligations in this case, including,

9    but not limited, to the payment of restitution.

10        Finally, any employment for Mr. Schmidt shall be

11   approved in advance by his supervising probation officer.

12        The defendant shall permit contact and communication

13   between his probation officer and his employer, including, but

14   not limited, to full-time, part-time, temporary, and/or

15   contract employment and employers.

16        That no fine is imposed.

17        That Mr. Schmidt shall pay forthwith a special

18   victim's fund assessment of $100.

19        That Mr. Schmidt shall pay restitution for the benefit

20   of the two victims identified by the Court in its foregoing

21   findings and conclusions payable immediately in care of the

22   clerk of the court in full in the amount of $5,000 to be paid

23   by the defendant, if not immediately, then in monthly

24   installments of not less than 10% of his monthly gross income

25   as determined periodically by his probation officer.

1          Restitution shall commence during the term of

2     supervised release.

3          That an order and judgment of forfeiture shall be

4     entered under Federal Rules of Criminal Procedure 32.2(b)(3),

5     Guideline Section 5E1.4, and 18 U.S.C. Section 2253(b) and 21

6     U.S.C. Section 853(p).

7          That presentence confinement shall be determined, as

8     it must under federal law, by the Bureau of Prisons itself.

9          I interrupt the dictation of my sentencing orders,

10    Mr. Steinberg, to inquire.  Does Mr. Schmidt seek the

11    recommendation of this Court to the Bureau of Prisons for a

12    specific designation?

13              *MR. STEINBERG:*  Yes.

14              *THE COURT:*  His request, please.

15              *MR. STEINBERG:*  Englewood, please.

16              *THE COURT:*  Very well.  Any objection by the

17    Government?

18              *MR. BERGSIEKER:*  No, Your Honor.

19              *MR. STEINBERG:*  Judge, may I address the Court on one

20    other recommendation we're requesting?

21              *THE COURT:*  You may.

22              *MR. STEINBERG:*  The RDAP program as well.

23              *THE COURT:*  Any objection by the Government?

24              *MR. BERGSIEKER:*  No, Your Honor.

25              *THE COURT:*  Very well.  With respect to the

1    recommendation concerning RDAP, on this record I specifically

2    and discretely find and conclude as follows:

3          That Mr. Schmidt has a demonstrated and documented

4    substance abuse problem during the 12 months before the date of

5    the commission of the count of conviction.  He does not suffer

6    from a serious mental impairment which would substantially

7    interfere with or preclude his full participation in RDAP, the

8    acronym for the Residential Drug Abuse Program of the Bureau of

9    Prisons and that his sentence is sufficiently lengthy to

10   facilitate his participation in and completion of RDAP.

11         Therefore, it is ordered further that the Court

12   recommends that the Bureau of Prisons designate Mr. Schmidt to

13   its Federal Correctional Institution in Englewood, Colorado,

14   and to facilitate his participation in and completion of RDAP.

15         And that, lastly, Mr. Schmidt is remanded forthwith to

16   the custody of the United States Marshal who shall transport

17   him as soon as practicable and with all deliberate speed to the

18   Bureau of Prisons, there to be received and kept in the manner

19   prescribed by law and consistent with the orders of this Court.

20         Done in open court effective forthwith.

21         Counsel, I provide you with this opportunity to state

22   and preserve for the record any objection you may have to the

23   procedural reasonableness of the sentence imposed by the Court.

24   Any such objection by the Government?

25         *MR. BERGSIEKER:*  No, Your Honor.  Thank you.

1          THE COURT:  Any such objection on behalf of

2   Mr. Schmidt?

3          MR. STEINBERG:  No, sir.

4          THE COURT:  Very well.

5          Is there further business to come before the Court?

6   By the Government?

7          MR. BERGSIEKER:  Your Honor, there is one last matter.

8   In light of the issue that the Court highlighted about

9   offenders contacting some of the victims in these child

10  pornography offenses, the attorney representing the victim in

11  the Vickie series has asked the Government request that the

12  Court order the defendant not contact the victim in the Vickie

13  series going forward.

14         THE COURT:  Any objection on behalf of Mr. Schmidt?

15         MR. STEINBERG:  No, sir.

16         THE COURT:  The objection is eminently reasonable,

17  unopposed, and, therefore, granted.  Thus, it is ordered

18  further that the defendant shall have no contact or

19  communication of any kind with the victims in the Vickie series

20  of child pornography.  Again, all done in open court effective

21  forthwith.

22         Further business on behalf of Mr. Schmidt,

23  Mr. Steinberg?

24         MR. STEINBERG:  No, sir.

25         THE COURT:  Very well.  Please close the record in

1  this case.  The Court is in momentary recess in anticipation of

2  commencing its 11:00 a.m. docket.

3          Madam Clerk, please declare the recess of the Court.

4          (Court stood in recess at 11:05.)

5                          * * * * *

6                    **REPORTER'S CERTIFICATE**

7      I certify that the foregoing is a correct transcript from

8  the record of proceedings in the above-entitled matter.  Dated

9  at Denver, Colorado, this 3rd day of July, 2013.

10

11                                  *S/Tracy Weir*
                                    Tracy Weir
12

13

14

15

16

17

18

19

20

21

22

23

24

25